IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| v. | §   EP-23-CR-2182-DB |
| | § |
| JACOB HERNANDEZ. | § |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE AND MOTION TO COMPEL

On this day, the Court considered the above-captioned case. On January 2, 2024, Defendant Jacob Hernandez ("Defendant") filed his "Motion to Transfer Case and Motion to Compel," ("Mot.") ECF No. 24.[1] On January 16, 2024, the Government filed its Response ("Resp.") to Defendant's Motion, ECF No. 28. Defendant then filed his Reply ("Reply") to the Government's Response on January 24, 2024, ECF No. 31. In his Motion, Defendant requests that the Court transfer his case from the Western District of Texas to the District of New Mexico, which Defendant believes is the more appropriate venue. Defendant also requests that the Court compel the Government to produce discovery that is relevant to the resolution of the motion. The Court now addresses Defendant's "Motion to Transfer Case and Motion to Compel," ECF No. 24.

## BACKGROUND

Defendant was arrested on October 16, 2023. *See* Complaint (Compl.) 2, ECF No. 1. On November 8, 2023, Defendant was charged by Indictment with two counts: (1) Conspiracy to Transport Aliens (in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

(a)(1)(B)(i)) and (2) Transporting Aliens for Financial Gain (in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i)). Indictment, ECF No. 14. Defendant is accused[2] of transporting a group of Undocumented Non-Citizens (UNCs) from the District of New Mexico into the Western District of Texas. *See* Compl., ECF No. 1.

On the night of October 16, 2023, authorities were conducting surveillance operations in Santa Teresa, New Mexico. *Id.* at 2. Agents observed a group of suspected UNCs at a warehouse and observed a black Ford Escape approach the warehouse. *Id.* Agents saw the black Ford Escape exit the warehouse and began following it. *Id.* Agents followed the vehicle until it reached the Speedway gas station located on Doniphan Drive and Mesa Street in El Paso, Texas, where it stopped. *Id.* Defendant exited the vehicle to pump gas, and agents approached him and began speaking with him. *Id.* Defendant advised the agents that there was a firearm in the vehicle and was subsequently taken into custody. *Id.* Agents observed three individuals sitting in the vehicle. *Id.* All four individuals, including Defendant, were transported to the Santa Teresa Border Patrol Station.[3] *Id.* Through interviews, the agents learned that the individuals in the vehicle had entered the United States illegally. *Id.* They also learned that Defendant was being paid $500 per person to transport the individuals. *Id.* Defendant advised the agents that the black Ford Escape belonged to him. *Id.*

---

[2] The Court compiles the following allegations against Defendant after reviewing the Complaint Affidavit and motions and responses from both parties.

[3] The Santa Teresa Border Patrol Station is within the El Paso Sector. The El Paso Sector covers the counties of El Paso and Hudspeth in the state of Texas and the entire state of New Mexico. *See* https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/el-paso-sector-texas.

## MOTION TO TRANSFER VENUE

### A. Legal standard

"The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed." *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 245 (1964). Venue, for purposes of a criminal case, is determined by Federal Rule of Criminal Procedure 18, which provides that "the government must prosecute an offense in a district where the offense was committed. Courts will consider "the district where the agreement was made or an overt act in furtherance of the conspiracy was committed," when determining venue for a conspiracy. *United States v. Sanchez*, 508 F.2d 388, 394 (5th Cir. 1975). In situations where an offense began in one district and was completed in another district, or was committed in more than one district, the case "may be . . . prosecuted in any district in which such offense was begun, continued, or completed." *See* 18 U.S.C. § 3237(a). The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18.

Rule 21 of the Federal Rules of Criminal Procedure governs transfer of a criminal case from one district to another district. "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). "Under Federal Rule of Criminal Procedure 21(b), a motion for change of venue is addressed to the sound discretion of the District Court." *United States v. Noland*, 495 F.2d 529, 534 (5th Cir. 1974). "The trial court is entitled to broad discretion in ruling on motions to

3

transfer venue, and its decision will be upheld absent an abuse of that discretion," *United States v. Ubak-Offiong*, 364 F. App'x. 859, 862 (5th Cir. 2010).

*Platt v. Minnesota Min. & Mfg. Co.* gives courts guidance on how to evaluate whether a case should be transferred to another district. 376 U.S. 240 (1964). The *Platt* factors are as follows: (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; (10) any other special elements which might affect the transfer. 376 U.S. at 244.

### B. Analysis

Defendant moves to transfer his case from the Western District of Texas – El Paso Division, to the District of New Mexico – Las Cruces Division. The Court analyzes transferring Defendant's case from the Western District of Texas to the District of New Mexico according to the *Platt* factors.

#### 1. Location of Defendant

Defendant does not make any arguments as to the location of the defendant in his motion. And in his Reply, he says that this factor is neutral. *See* Reply 7, ECF No. 31. The Government argues that, according to Fifth Circuit authority, "no significance should be attributed to a defendant's place of residence." Response ("Resp.") 7, ECF No. 28; *see United States v. Sanchez*, 508 F.2d 388, 395 (5th Cir. 1975). Further, the Government argues that Defendant lists his place of residence as El Paso, Texas, which is in the Western District of

4

Texas, and this factor should counsel against transfer. *See id.* The Court in *Sanchez* also held that residence of the defendants is not a relevant factor. *See* 508 F.2d at 395.

Because Defendant is a resident of El Paso, Texas, which is in the Western District of Texas, this factor does not weigh in favor of transfer.

*2. Location of Possible Witnesses*

As far as the location of possible witnesses, Defendant argues that "most law enforcement witnesses . . . are all in New Mexico." Mot. 9, ECF No. 24. In his Reply, Defendant says that this factor is "neutral." Reply 7, ECF No. 31. The Government argues that this factor weighs against transfer because "the Santa Teresa [Border Patrol] Station serves a part of the El Paso Sector for Border Patrol, and many agents reside in El Paso." Resp. 7, ECF No. 28. Additionally, the Government argues that Defendant "neither identifies specific witnesses he may call nor demonstrates why he would not be able to call them as witnesses . . . in El Paso." *Id.*

In *United States v. Noland*, the district court was faced with similar issues regarding witnesses. 495 F.2d 259 (5th Cir. 1974). Defendant Noland argued that Colorado witnesses would be inconvenienced with a trial in Texas, however he "failed to demonstrate specific facts from which the District Court could have concluded that the convenience of witnesses and the interest of justice required transfer." 495 F.2d at 534. In the instant case, agents are local, many residing in El Paso, and even if they lived in New Mexico, that is still close enough to El Paso to not pose a problem should agents or other law enforcement individuals need to travel to El Paso for trial. This factor thus does not weigh in favor of transfer to the District of New Mexico.

5

### 3. *Location of Events Likely to be in Issue*

Defendant asserts that most of the key events that took place on the night of October 16, 2023, took place in New Mexico. Mot. 9, ECF No. 24. He states that he allegedly picked up the undocumented migrants in New Mexico and that he was processed by New Mexico Border Patrol. *Id.* Defendant claims that the only contact he had with Texas was "being stopped in El Paso, just over the state line." *Id.* Defendant further argues this point in his Reply, stating that this factor "strongly favors transfer to the District of New Mexico, where almost all of the alleged offense and law enforcement interactions took place." Reply 3, ECF No. 31. He states that "New Mexico Border Patrol allegedly observed the undocumented migrants enter the country in New Mexico [and] . . . declined to stop them, instead following them for a lengthy period of time, and orchestrating their apprehension in El Paso, Texas." *Id.* at 4. Although he was apprehended in Texas, Defendant claims that "[t]he vast majority of the offense itself and its investigation undisputedly took place in New Mexico." *Id.*

The Government has a different interpretation of this factor. The Government states that the conspiracy "encompassed both the Western District of Texas and the District of New Mexico." Resp. 8, ECF No. 28. The Government contends that Defendant and his co-conspirator, Mr. Paulo Segura, met at Defendant's residence in El Paso, Texas, to put together the plan to pick up the migrants. *Id.* And it was in El Paso, Texas, where Defendant received the gun from Mr. Segura. *Id.* Finally, the Government asserts that "Defendant has not alleged that the events occurring in New Mexico are more likely to be 'at issue' than the events occurring in Texas." *Id.* at 9.

6

Once again, the Court agrees with the Government on this point. While it's clear that a portion of the alleged offense took place in the District of New Mexico, a large portion *also* took place in the Western District of Texas. Defendant was apprehended and arrested in the Western District of Texas, not the District of New Mexico. And while he was taken back to the Santa Teresa Border Patrol Station for questioning and processing, the Santa Teresa Border Patrol Station is part of the El Paso Border Patrol Sector.[4] The Court does not believe that the events occurring in New Mexico would be more at issue than the events occurring in El Paso, Texas. This, therefore, does not weigh in favor of transfer to the District of New Mexico.

*4. Location of Documents and Records Likely to be Involved*

With regard to the location of documents and records likely to be involved, Defendant asserts that law enforcement's evidence is in New Mexico. Mot. 9, ECF No. 24. The Government responds to this by saying that "the evidence required for trial is readily moveable, and already in El Paso, Texas." Resp. 7, ECF No. 28. The Government further states that "[t]he location of the documents and records are not of vital importance to this case. The Defendant has the same access to the reports and records made in the District of New Mexico as he would in [the Western District of Texas]." *Id.* at 9.

The Court agrees with the Government and finds that the records in this case are as easily accessible in the Western District of Texas as they would be in the District of New Mexico, and therefore this factor does not weigh in favor of transfer of the case.

*5. Disruption of Defendant's Business Unless the Case is Transferred*

---

[4] The Santa Teresa Border Patrol Station is within the El Paso Sector. The El Paso Sector covers the counties of El Paso and Hudspeth in the state of Texas and the entire state of New Mexico. *See* https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/el-paso-sector-texas.

7

Defendant does not make any arguments with regard to disruption to his employment or business. The only thing the Government says about this factor is that Defendant "has not made a showing of disruption to his business or financial hardship to warrant a transfer." Resp. 10, ECF No. 28. The Court agrees with the Government and finds that this factor does not weigh in favor of transfer.

### 6. *Expense to the Parties*

Defendant simply says that "[t]he convenience of the parties and interests of justice are best served by transferring this case to the more appropriate District of New Mexico." Mot. 9, ECF No. 24. The Government asserts that the expense to the parties is not an issue. *See* Resp. 10, ECF No. 28. Defendant is indigent and has court appointed counsel, and the cost to litigate the case would be the same. *Id.* The Court agrees with the Government on this point. Because Defendant is indigent and has Court-appointed counsel, the costs to the Government and the Defendant would be the same, namely, that the Defendant would bear no extra costs. This factor does not weigh in favor of transfer.

### 7. *Location of Counsel*

Similarly to the previous factor, Defendant states that "[t]he convenience of the parties and interests of justice are best served by transferring this case to the more appropriate District of New Mexico." Mot. 9, ECF No. 24. The Government counters by stating that if the case were transferred to the District of New Mexico from the Western District of Texas, the prosecution team would not change. See Resp. 10, ECF No. 28. So it is the Government, not Defendant's counsel, who would bear the burden of traveling back and forth between the District

8

of New Mexico and the Western District of Texas. *Id.* The Court is persuaded by the Government's arguments and finds that this does not weigh in favor of transfer.

8. *Relative Accessibility of Place at Trial*

Once again, Defendant does not make any arguments regarding this point other than saying "[t]he convenience of the parties and interests of justice are best served by transferring the case to the more appropriate District of New Mexico." Mot. 9, ECF No. 24. The Government notes that "[t]he Western District of Texas, El Paso Division, and the Las Cruces Division of the District of New Mexico are accessible to Defendant. Defendant hasn't shown a particularized residence in the District of New Mexico, and in actuality, resides in El Paso, Texas." Resp. 11, ECF No. 28. Because Defendant actually resides in El Paso, Texas, and the Las Cruces Division of the District of New Mexico is just as accessible to him as is the Western District of Texas, El Paso Division, this factor does not weigh in favor of transfer.

9. *Docket Condition of Each District or Division Involved*

Defendant argues that the Western District of Texas "has the second most pending cases of any district in the country (7,679) . . . meanwhile, the District of New Mexico saw a 17% drop-off in the past year, and currently has just 1,656 pending cases."[5] Mot. 8, ECF No. 24. He claims that "[The Western District of Texas] has one of the busiest criminal dockets in the country and the courts should not have to expend additional resources accommodating the §1324 caseload of the District of New Mexico as well. *Id.* Defendant also mentions that the Western District of Texas currently has four judicial vacancies, whereas the District of New Mexico has

---

[5] United States Courts, Criminal Statistical Tables for the Federal Judiciary (June 30, 2023), www.uscourts.gov/statistics/table/d/statistical-tables-federal-judiciary/2023/06/30.

9

none. *Id.* Because of this, Defendant argues that "[t]he docket conditions strongly favor transfer to the District of New Mexico." Reply 5, ECF No. 31.

The Government counters these arguments by stating that "even if venue were transferred, the prosecution team from the Western District of Texas would remain on the case and would continue to prosecute the case accordingly. Change of venue does not change the prosecution team or the charging decisions of the Executive Branch." Resp. 11, ECF No. 28. The Government also notes that "this Court, while taxed, has historically and continues, to operate at a high level of efficiency." *Id.* Defendant states that the Government referencing the prosecution team is a "non sequitur," and does not actually address the issue of docket conditions. Reply 5, ECF No. 31.

The Court agrees with the Defendant in part and the Government in part. The Court does not believe that the prosecution team remaining the same has anything to do with docket conditions in the Western District of Texas. And to be sure, this is an extremely busy district and division. However, heavy criminal dockets are not new to any of the Courts in the Western District of Texas, especially this Court. This Court has the capacity and ability to continue to hear and handle all of the criminal cases that come before it. So, while the Court agrees with Defendant that the docket conditions in the Western District of Texas are heavier than they are in the District of New Mexico, these conditions will not result in an undue delay in his case. Therefore, this factor weighs against transfer to the District of New Mexico.

*10. Any Other Special Elements Which Might Affect the Transfer*

Finally, the Court will address the special elements which might affect the transfer of this instant case from the Western District of Texas to the District of New Mexico. Defendant

focused much of his legal argument on this particular factor. Defendant accuses the Government of "forum shopping" and regards this as a special element favoring transfer to the District of New Mexico. Mot. 6–8, ECF No. 24.

Defendant claims that Border Patrol "has unsubtly endeavored to avoid the more efficient (and at times, defendant-favorable) process in the District of New Mexico, by finding or manufacturing venue for this case and countless others in the Western District of Texas." Mot. 6, ECF No. 24. Defendant claims that just because agents declined to stop the car in which he was a passenger in New Mexico, it does not give the Government an unfettered license to forum shop. *Id.* Defendant claims that the forum shopping is "particularly troubling because it is increasingly detrimental to public safety." *Id.* at 7. He argues that the agents "could have stopped the car [allegedly carrying the migrants] anywhere during the 10 miles it followed it through New Mexico, and would have done so in a far less populated area." *Id.*

Defendant notes various dangerous situations created by the Department of Public Safety in El Paso, Texas, which has led to deadly crashes and unsafe road conditions. *Id.* He argues that these high-speed chases, car accidents, and police shootings endanger the public, and are done "seemingly to avoid charging § 1324 cases in the District of New Mexico." *Id.* at 8. The reason that Defendant points to for avoiding charging these types of cases in the District of New Mexico is "to avoid Fast Track and other policies in the District of New Mexico." Reply 6, ECF No. 31. He states that "courts have transferred venue under Rule 21(b) where, among other issues, 'the charging decision of the United States, *apparently unaccountable on neutral principles*, creates the unmistakable and disquieting impression of 'forum shopping,'" (citing *United States v. Gotti*, 593 F. Supp. 2d 1260, 1270 (M.D. Fla. 2008)). Mot. 6, ECF No. 24.

11

The Government, on the other hand, argues that "there is no forum that has been shopped." Resp. 12, ECF No. 28. It claims that Defendant is actually the one engaging in forum-shopping because he is "seeking a prosecution outcome consistent with another United States Attorney's Office charging and plea policy guidelines." *Id.* The Government reminds the Court that even if this case were to be transferred to the District of New Mexico, the prosecution would remain the same, and the only thing that would change is the location of the trial itself. *Id.* The Government states once again that "[t]he offense began in the Western District of Texas at the Defendants (sic) home in El Paso." *Id.* And that the "offense continued to the District of New Mexico where the Defendant and Segura picked up the aliens. *Id.* Finally, the offense continued and was to be concluded in the Western District of Texas as the Defendant and Segura intended to transport the aliens to a restaurant in El Paso, Texas." *Id.* The Government stresses that the "Western District of Texas was chosen as an appropriate venue because the Defendant committed his crimes here and because a significant portion of the Defendants (sic) conduct occurred here." *Id.*

The Court takes extremely seriously the potential risk that the actions of the Department of Public Safety and other law enforcement agencies pose to the residents of El Paso and its surrounding communities when they decide to engage in high-speed chases in residential areas in pursuit of potential alien smuggling activities. Based on the reports available to this Court, this is not a case in which law enforcement created a risky situation, but instead the driver

of Defendant's Ford Escape, Paulo Segura, is the one who created the dangerous conditions involved in this case.[6] *See* Compl. 2, ECF No. 1.

The Court is not persuaded that the Government engaged in forum-shopping because the Government's decision to charge Defendant in the Western District of Texas is *not* "unaccountable on neutral principles." *Gotti*, 593 F. Supp. 2d at 1270. Instead, there are "neutral" reasons for the Government to file Defendant's case in the Western District of Texas, including the fact that the conspiracy was made in the Western District of Texas and the arrest occurred in the Western District of Texas. *See* Compl.,, ECF No. 1. For this reason, the Court does not believe that the Government engaged in forum shopping, so this factor does not weigh in favor of transfer.

### C. Conclusion

Having considered and weighed all of the *Platt* factors, the Court does not believe that transferring the instant case from the Western District of Texas to the District of New Mexico would be appropriate. The Court is persuaded by the fact that Defendant lives in El Paso, which is located in the Western District of Texas, the fact that the conspiracy began and ended in the Western District of Texas, and all of the records and witnesses are either already present or easily moved to the Western District of Texas. The Court does not believe the

---

[6] At the time that Defendant and Mr. Segura stopped at the Speedway gas station, Mr. Segura allegedly "ran inside the Speedway convenience store and barricaded himself," after producing a handgun and pointing it at the officers who approached Defendant and Mr. Segura. *See* Compl. 2, ECF No. 1. According to public reports made about the incident, members of the El Paso Police Department SWAT team shot and killed Mr. Segura after a standoff in the Speedway convenience store; *See* Melissa Luna, Suspect shot, killed after standoff at gas station in Upper Valley, KTSM, October 16, 2023, available at: https://www.ktsm.com/news/heavy-police-presence-seen-at-speedway-in-upper-valley/.

Government engaged in forum shopping, so it does not interpret this as a "special element" weighing in favor of transfer.

## MOTION TO COMPEL

Defendant also requests this Court to compel the Government to produce discovery that Defendant believes is "relevant to the resolution of this Motion." Mot. 10, ECF No. 24. Defendant argues that Rule 16 of the Federal Rules of Criminal Procedure "requires that the Government provide, upon request, "items material to preparing the defense." *Id.*; *see also* Fed. R. Crim. P. 16(a)(1)(E)(i).[7]

In his Motion, Defendant requests "Border Patrol Standard Operating Procedures, policies, internal communications, and/or communications with other entities including the U.S. Attorney's Office detailing any reasons for favoring the Western District of Texas as the venue for § 1324 cases, or otherwise explaining this pattern." Mot. 10, ECF No. 24. Defendant requests these items because he believes "the reasons for New Mexico § 1324 cases being brought in Texas are plainly material to this motion and, thus, are discoverable under *Brady* and/or Rule 16." *Id.* at 11.

The Government contends that "[n]one of the items the Defendant is requesting are relevant to the resolution of this motion." Resp. 14, ECF No. 28. Moreover, the Government claims that the documents and records Defendant is requesting are not related to the *Platt* analysis, nor are necessary to decide the issue of whether to transfer this case from the Western

---

[7] Fed. R. Crim. P. 16(a)(1)(E)(i) – Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense.

14

District of Texas to the District of New Mexico. *Id.* Further, the Government argues that the records and documents that Defendant is requesting would not be discoverable and not subject to disclosure because they are "records of deliberative process, reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation for prosecuting the case." *Id.*; *see also* Fed. R. Crim. P. 16(a)(2)[8].

The Court agrees with the Government on this matter as well. The Court does not believe that the records and discovery requested by Defendant are "relevant to the resolution of this Motion." The Court was able to resolve the transfer of venue issue based on the pleadings and what has already been submitted by the parties. Because Defendant's Motion to Transfer Venue has already been resolved without the requested records, the Court does not find that these records are necessary to the resolution and the Motion to Compel is denied.

## CONCLUSION

Defendant Jacob Hernandez moves the Court to transfer his criminal case from the Western District of Texas, where it is currently being heard, to the District of New Mexico, where he believes venue is more proper. He further moves the Court to compel the Government to turn over certain records and discovery he believes are necessary in resolving this Motion and necessary to the resolution of his case in general. The Government argues that venue is proper in

---

[8] Fed. R. Crim. P. 16(a)(2) – Information Not Subject to Disclosure. Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of: (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or (B) a statement made to the defendant, or the defendant's attorney or agent, by: (i) the defendant; (ii) a government or defense witness; or (iii) a prospective government or defense witness.

the Western District of Texas and the case should remain in the Western District of Texas. The Government further argues that Defendant is not entitled to the records that he is requesting.

After analyzing the *Platt* factors, the Court finds that Defendant has not met his burden to show that transfer to the District of New Mexico is warranted. The Court also finds that Defendant is not entitled to the discovery he is requesting because this discovery is not necessary to resolving this Motion. Therefore, the Court will deny Defendant's Motion to Transfer Venue and Motion to Compel, ECF No. 24.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's "Motion to Transfer Venue and Motion to Compel," ECF No. 24, is **DENIED**.

SIGNED this 15th day of **APRIL 2024**.

_____
**THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE**